**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **FABIAN C. FLEIFEL,** | ) | |
| **ID # 57575-018,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:18-CV-2289-D-BH** |
| **vs.** | ) | **No. 3:12-CR-318-D(3)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court are the movant's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Amended*, received on October 25, 2018 (doc. 10), and *Motion to Amend 28:USC 2255 Motion to Vacate Sentence and Conviction*, received on June 1, 2021 (doc. 26). Based on the relevant filings and applicable law, the motion to amend is **GRANTED**, and the motion to vacate should be **DENIED** with prejudice.

## I.    BACKGROUND

Fabian C. Fleifel (Movant) challenges his federal conviction and sentence in Cause No. 3:12-CR-318-D(3). The respondent is the United States of America (Government).

### A.    Conviction and Sentencing

On October 3, 2012, Movant and several co-defendants were charged by indictment with conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349 (18 U.S.C. §§ 1341, 1343, and 1344) (Count One); mail fraud, telemarketing, and aiding and abetting in violation of 18 U.S.C. §§ 1341, 2326, and 2 (Counts Two through Twenty); and wire fraud, telemarketing, and aiding and abetting in violation of 18 U.S.C. §§ 1343, 2326, and 2 (Counts

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

Twenty-One through Twenty-Six). (*See* doc. 1.)[2] After a nine-day jury trial in July 2015, he was found guilty on all counts of the indictment. (*See* doc. 487.)

On October 2, 2015, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) in which it applied the 2014 United States Sentencing Guidelines Manual. (*See* doc. 522-1 at ¶ 48.) The PSR grouped all 26 counts together under U.S.S.G. § 2X1.1 to determine the base offense level. (*See id.* at ¶ 51.) Based on the statutory maximum term of imprisonment for Movant's substantive offenses of mail fraud, wire fraud, and bank fraud, his base offense level started at 7, under U.S.S.G. § 2B1.1(a)(1). (*See id.* at ¶ 52.) The PSR calculated the reasonably foreseeable intended loss at $7,893,071.62. (*See id.* at ¶¶ 43-44, 52.) Because this amount was more than $7 million but less than $20 million, 20 levels were added under U.S.S.G. § 2B1.1(b)(1)(K). (*See id.* at ¶ 52.) Six levels were added because the offense involved 250 or more victims, and two levels were added because the offense involved sophisticated means, resulting in a base offense level of 35. (*See id.*) Four levels were added based on Movant's role as an organizer and leader, for a total offense level of 39. (*See id.* at ¶¶ 55, 60.) Based on a criminal history category of I and an offense level of 39, the guideline range of imprisonment was 262-327 months. (*See id.* at ¶ 100.)

Movant objected to the PSR on grounds that the 2015 United States Sentencing Guidelines Manual applied, and that the Government "double-counted and accounted for loss amounts that should not be attributed" to him, although he stated that the appropriate loss amount was not below $3,500,000 and his guideline level would therefore not be affected. (doc. 582 at 1.) He also objected to the two levels for sophisticated means, and the four-level role enhancement. (*See id.* at 1-4.) Movant additionally clarified that there was no "C" for his middle name because he does

---

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:12-CR-318-D(3).

not have a middle name.  (*See id.* at 4.)  The Government objected to the loss calculation, arguing that some loss amounts were double-counted, and that the total loss amount attributed to Movant should be reduced to $7,507,938.46, resulting in an increase of 18 levels instead of 20 levels.  (*See* doc. 602 at 1.)  It also objected that only a two-level increase applied under the amended guideline provision for an offense involving 250 or more victims.  (*See id.* at 2.)  Finally, it objected to the exclusion of additional enhancements that would increase Movant's total offense level to 41.  (*See id.* at 3-10.)

The USPO submitted an addendum to the PSR on February 1, 2016, addressing the parties' objections.  (*See* doc. 606-1.)  It agreed that the 2015 United States Sentencing Guidelines Manual applied, accepted the Government's corrections to the loss amount, and accepted Movant's objection to the loss amount and clarification of his name, but it rejected the Government's objections to the exclusion of additional enhancements that would increase Movant's offense level, and Movant's objections to the sophisticated means and role enhancements.  (*See id.* at 1-4.)  The addendum also noted that restitution had been determined since the filing of the original PSR.  (*See id.* at 5.)  Based on the objections and restitution information, the addendum revised the base offense level to 29, and then added four levels based on Movant's role in the offense, resulting in a total offense level of 33.  (*See id.* at ¶¶ 48, 52, 55, 60.)  The resulting guideline range of imprisonment was 135-168 months.  (*See id.* at ¶ 100.)  Movant objected to the addendum, challenging portions of the Government's response and reasserting that the sophisticated means and role enhancements should not apply.  (*See* doc. 613 at 1-6.)  He also objected that the restitution amount was incorrect and requested a continuance to investigate the restitution amount after sentencing.  (*See id.* at 6.)

At the sentencing hearing on February 5, 2016, the Court heard arguments on Movant's

request for a continuance and objections to the PSR and its addenda. (*See* doc. 659 at 4-12.) His

request for a continuance was denied, and his objections were overruled. (*See id.* at 10, 12.) By

amended judgment dated July 11, 2016, Movant was sentenced to 168 months' imprisonment on

each count, to run concurrently except as to the mandatory special assessments, which would run

consecutively, to be followed by a two-year term of supervised release. (*See* doc. 766 at 1-4.) He

was also ordered to pay an assessment of $2,600, and restitution in the amount of $1,346,513.21,

jointly and severally, with his various co-defendants. (*See id.* at 6-33.)

On appeal, Movant challenged the sophisticated means and role enhancements. *See United States v. Fleifel*, 689 F. App'x 817, 817 (5th Cir. 2017). He also challenged the restitution order on grounds that it was based on speculation and conjecture. *See id.* at 818. The Fifth Circuit affirmed the amended judgment on May 26, 2017. *See id.* Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.    Substantive Claims**

Movant asserts ten grounds for relief:

(1) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial lawyer failed neither to discuss nor present evidence of [Movant's] good character for honesty and lawabidedness [sic];

(2) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial lawyer failed to object to the presentence reports [sic] loss calculation for sentencing guideline purposes and demand an evidentiary hearing because the Governments [sic] loss calculation evidence was inaccurate and lacked sufficient indicia of reliability to support its probable accuracy;

(3) The trial court erred in calculating loss for sentencing guideline purposes because the Governments [sic] methodology and proffer at sentencing was inaccurate and lacked sufficient indicia of reliability to support its probable accuracy;

(4) The trial judge erred at sentencing by shifting the burden of proof from the

4

Government onto the Movant to show basis for court to question the sufficient indicia of reliablity [sic] of the Government's loss calculation for sentencing guideline purposes;

(5) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial lawyer failed to object to the court's failure to apportion loss between Movant and his co-conspirators and reduce the loss by legitimate business expenses;

(6) Trial court erred in not apportioning loss for sentencing guideline purposes between Movant and his co-conspirators, and reduce the loss by legitimate business expenses.

(7) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial lawyer failed to object, move to strike, and, request limiting instruction as to the Government's direct examination line and closing argument that the trial judge in addition to the jury would be deciding whether the Government cooperating witnesses were telling the truth, reducing the jury's perception of their exclusive role as the sole arbiters of the credibility of the Government's cooperators.

(8) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial lawyer failed to object and move to strike the Government witness Rani Khoury's testimony that Movant was interested in doing something in telemarking ", [sic] cause he sees, I guess, people coming into Rachel"s [sic] as patrons throwing money around, that are making money.  So he wanted to also become something in the telemarketing industry";

(9) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial lawyer failed to move in limine, object at trial, and/or request limiting instructions as to evidence that the Movant was a bouncer at a gentlemen's club, because said evidence was evidence of bad character that created the propensity risk that the jury would consider him a bad person and therefore guilty; and

(10) Movant was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment because his trial counsel failed to object to the Government prosecutor's contact with defense witness Rich Ilgenfritz as unconstitutionally impeding his exercise of his constitutional right to compulsory process by intimidating him into not testifying for Movant but for Government by warning him of the possibility of self incrimination [sic] and by threatening to bring new charges against him.

(No. 3:18-CV-2289-D-BH, doc. 10 at 21-28.)  On November 26, 2018, the Government filed a

5

response. (*See id.*, doc. 11.) Movant filed a reply on March 19, 2019. (*See* doc. 18.) On June 1, 2021, Movant filed a motion to amend his § 2255 motion to raise the additional grounds for relief of: (1) actual factual innocence (Amended Claim 1); (2) prosecutorial misconduct (Amended Claim 2); and (3) ineffective assistance of counsel for counsel's failure to "file[ ] a pre trial motion to dismiss [Movant's] indictment due to mistaken identity" (Amended Claim 3). (*Id.*, doc. 26 at 1, 7-9.)

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    STATUTE OF LIMITATIONS

The Government contends that Movant's tenth ground for relief is untimely.  (*See* No. 3:18-CV-2289-D-BH, doc. 11 at 5, 20-23.)

Section 2255 of Title 28 "establishes a '1-year period of limitation' within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence under that section." *Dodd v. United States*, 545 U.S. 353, 354 (2005).  It states:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

(1)    The date on which the judgment of conviction becomes final;

(2)    The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  With regard to § 2255(f)(1), the judgment was affirmed on May 26, 2017.  *See Fleifel*, 689 F. App'x at 818.  The judgment of conviction became final on August 26, 2017, when the ninety-day period for filing a certiorari petition with the Supreme Court expired.  *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").  Movant therefore had until August 26, 2018, to file his § 2255 motion.

Movant's original § 2255 motion was mailed on August 20, 2018, prior to the expiration

of the limitations period.[3]  (*See* No.18-CV-2289-D-BH, doc. 2 at 19.)  His first motion to amend, dated October 4, 2018, was received on October 24, 2018. (*See id.*, doc. 8.)  The amended § 2255 motion presented an additional claim that differed from those in his prior motion.  (*See id.*, doc. 8 at 1-2, 30; doc. 10 at 28.)  His first motion to amend was granted on October 25, 2018. (*See id.*, doc. 9.)   Movant filed a second motion to amend on June 1, 2021, seeking to raise three new claims.  (*See id.*, doc. 26.)

## A.    <u>First Motion to Amend</u>

Movant' first amended § 2255 motion included a new tenth claim that his counsel was ineffective because he "failed to object to the Government prosecutor's contact with defense witness Rich Ilgenfritz as unconstitutionally impeding his exercise of his constitutional right to compulsory process by intimidating him into not testifying for Movant but for Government by warning him of the possibility of self incrimination [sic] and by threatening to bring new charges against him."  (*Id.*, doc. 10 at 28.)

### 1.  *Relation Back*

Rule 15 of the Federal Rules of Civil Procedure provides for the relation back of amendments filed after the expiration of the limitations period to the date of the original pleading when the claim asserted in the proposed amended pleading arises out of the same conduct, transaction, or occurrence.  *See* Fed. R. Civ. P. 15(c)(1); *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (recognizing that Rule 15 applies in § 2255 proceedings).  Habeas claims do not automatically arise of the same occurrence for purposes of Rule 15 merely because they arise out of the same trial and conviction, however.  *See Mayle v. Felix*, 545 U.S. 644, 661-64 (2005)

---

[3] Under the prison mailbox rule, a *pro se* prisoner's pleading is deemed filed on the day he placed it in the prison mail system.  *See United States v. Duran*, 934 F.3d 407, 412 (5th Cir. 2019) (citing *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011)).

(holding that an amended habeas petition under 28 U.S.C. § 2254 "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."); *United States v. Duffus*, 174 F.3d 333, 338 (3d Cir. 1999) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."); *see also Sharper v. Dretke*, No. 3:01-CV-1405-P, 2004 WL 1074068, at *4-5 (N.D. Tex. May 12, 2004), *rec. adopted*, 2004 WL 1348592 (N.D. Tex. June 14, 2004). Moreover, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, [courts] must look to whether [the movant's] new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (quoting *Mayle*, 55 U.S. at 650).

Here, the parties agree that Movant's tenth ground for relief is untimely and does not relate back to any of Movant's timely-filed claims. (*See* No. 3:18-CV-2289-D-BH, doc. 11 at 22; doc. 18 at 8-9.) Movant's tenth ground is therefore barred absent equitable tolling.

### 2. *Equitable Tolling*

"[T]he statute of limitations in § 2255 may be equitably tolled in 'rare and exceptional circumstances.'" *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis* 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d

9

398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)), *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013).

In the context of a habeas petition filed by a state prisoner, the Supreme Court has stated that a habeas petitioner is entitled to equitable tolling only if he shows that: (1) "he has been pursuing his rights diligently," and (2) some extraordinary circumstance prevented a timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "[E]quity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989). Movant bears the burden to show entitlement to equitable tolling. *See, e.g.*, *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

Here, the one-year limitations period ended on August 26, 2018. Over one month after the expiration of the limitations period, Movant amended his § 2255 to add a tenth ground for relief. (*See* No. 3:18-CV-2289-D-BH, doc. 8 at 1-2, 30; doc. 10 at 28.) He claims that his untimely addition of the tenth ground should be excused by equitable tolling because of the various "challenges of preparing a detailed lengthy legal document with the resources made available, or more accurately, not available, in the FCI Ft. Dix library," and because "Ground 10 as written was intended to be included in the original filing but was mistakenly deleted or omitted, and the mistake was not noticed for 40 days." (*Id.*, doc. 18 at 9.)

Movant's arguments provide no basis for equitably tolling the limitations period for his tenth ground. The Fifth Circuit has held that "an inadequate law library does not constitute a 'rare and exceptional' circumstance warranting equitable tolling." *Scott v. Johnson*, 227 F.3d 260, 263 n.3 (5th Cir. 2000) (citing *Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir. 2000)). Nor is the

alleged mistake in omitting or deleting the tenth ground from his original § 2255 motion sufficient to warrant equitable tolling.  *See Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) ("a petitioner's ignorance or mistake is insufficient to warrant equitable tolling.").  Because Movant has not met his burden to establish circumstances warranting equitable tolling, his tenth ground should be denied as untimely.

## B.   <u>Second Motion to Amend</u>

On June 1, 2021, Movant's second motion to amend was received, in which he presented three new claims based on mistaken identity: (1) actual innocence; (2) prosecutorial misconduct; and (3) ineffective assistance of counsel.  (*See* No. 3:18-CV-2289-D-BH, doc. 26.)  When a responsive pleading has already been filed, as here, Rule 15(a) permits a party to amend his pleading only with either the opposing party's written consent or the court's leave.  Under this rule, the court should freely give leave when justice requires.  Fed. R. Civ. P. 15(a)(2).  Leave to amend should not be denied "unless there is a substantial reason to do so."  *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citation and internal quotation marks omitted).  The motion to amend is granted, and the new claims are considered.

### 1.   *Relation Back*

Movant's first amended § 2255 motion generally alleges that: (1) his counsel was ineffective for failing to present good character evidence, object to the loss calculation and apportionment, challenge the Government's statements about the role of the jury, challenge a co-conspirator's testimony, challenge bad character evidence, and challenge the Government's actions relating to a defense witness; and (2) the Court erred in determining the loss calculation.  (*See id.*, doc. 10 at 21-28.)  In Amended Claim 1 in the second amended § 2255 motion, he contends that he is actually innocent based on mistaken identity because the indictment under

11

which he was arrested, charged, and convicted identified a "Fabian Charles Fleifel D.O.B. May 10, 1972," and that he is "Fabian (no middle name) Fleifel D.O.B. May 10, 1970." (*Id.*, doc. 26 at 2.) His Amended Claim 2 alleges prosecutorial misconduct based on alleged false statements to the grand jury and trial jury relating to mistaken identity. (*See id.*, doc. 26 at 7-8.) Amended Claim 3 alleges ineffective assistance of counsel based on counsel's failure to challenge the Government's actions in Amended Claim 2 and to file "a pre trial motion to dismiss his indictment due to mistaken identity." (*Id.*, doc. 26 at 8-9.)

Movant's new claims allege mistaken identity in the grand jury indictment and the failure to challenge the proceedings based on mistaken identity. The facts underlying these new claims differ in type from, and do not arise out of the "conduct, transaction, or occurrence set out–or attempted to be set out–," in his first amended § 2255 motion. *Gonzalez*, 592 F.3d at 679. As a result, they do not relate back and are untimely in the absence of equitable tolling.

### 2. Equitable Tolling

Movan's second § 2255 motion provides no basis for tolling the limitations period. Because he has not met his burden to establish circumstances warranting equitable tolling, his new mistaken identity claims should be denied as untimely.

### 3. Actual Innocence

To the extent Movant's actual innocence claim can be construed as a potential basis for equitable tolling, it fails. In *McQuiggin v. Perkins*, 569 U.S. 383, 386-91 (2013), the Supreme Court held that even where a habeas petitioner has failed to demonstrate the due diligence required to equitably toll the statute of limitations, a plea of actual innocence can overcome the one-year statute of limitations under the "miscarriage of justice" exception to a procedural bar. A tenable actual innocence claim must persuade a district court that it is more likely than not that no rational

fact-finder would have found the movant guilty beyond a reasonable doubt in light of the newly discovered evidence and the evidence presented at trial. *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) (citing *McQuiggin*, 569 U.S. at 386). The untimeliness of a plea of actual innocence does bear on the credibility of the evidence offered. *McQuiggin*, 569 U.S. at 399-400. "[A] credible claim [of actual innocence to excuse the untimeliness of a habeas petition] must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Floyd*, 894 F.3d at 155 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "This exception's demanding standard requires 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' . . . The standard is seldom met." *Id.* at 154-55 (citing *McQuiggin*, 569 U.S. at 401; *House v. Bell*, 547 U.S. 518, 538 (2006)).

Here, nearly six years after he was tried and convicted, Movant alleges that he is actually innocent on the grounds that he was arrested, tried, and convicted based on mistaken identity because the indictment identified a "Fabian Charles Fleifel D.O.B. May 10, 1972," but he is "Fabian (no middle name) Fleifel D.O.B. May 10, 1970." (No. 3:18-CV-2289-D-BH, doc. 26 at 2.) Although he characterizes his claim as one of actual innocence, the substance of his allegations challenges the sufficiency of the indictment and testimony, not the conduct underlying his convictions. (*See id.*, doc. 26.) Even if his claim could be construed as alleging actual innocence, rather than challenging the legal sufficiency of his convictions, Movant has failed to present any "new reliable evidence" to support his claim.[4]  *Floyd*, 894 F.3d at 155. Accordingly, he is not

---

[4] Movant relies on the indictment, trial testimony, filings in the criminal proceedings, public records, and his own personal identification documents to support his new claims. None of this evidence is new for purposes of tolling the limitations period, and it was available prior to the expiration of the limitations period.

entitled to equitable tolling based on alleged actual innocence, and his new mistaken identity claims are time-barred and should be denied.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.  It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").  Reviewing courts must consider the totality of the evidence

14

before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.    **Failure to Discuss or Present Good Character Evidence**

In his first ground, Movant argues that his counsel was ineffective for failing "to discuss [or] present evidence of [Movant's] good character for honesty and lawabidedness [sic]."  (No. 3:18-CV2289-D-BH, doc. 10 at 21-22; *see also id.*, doc. 18 at 4-6.)  He claims that counsel "did not discuss potential character witnesses, and failed to present good character testimony for honesty and lawabidedness [sic] at trial."  (*Id.*, doc. 10 at 21.)

"[C]omplaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).  In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the [movant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Day,* 566 F.3d at 538; *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985).  Movant has failed to meet this burden.

Here, Movant listed over two dozen individuals from Florida, London, and Louisiana, who he claimed "are willing and able to testify as to the good character of Movant for Honesty and Lawibidedness [sic]."  (No. 3:18-CV-2289-D-BH, doc. 10 at 22.)   Beyond this conclusory and unsubstantiated statement, he failed to provide any evidence demonstrating that these individuals were available to testify at trial and would have done so, setting out the content of the witnesses' proposed testimony, or showing that the testimony would have been favorable to a particular defense.  In his reply, Movant set out potential testimony in form of character witness affidavits

from five individuals in Florida and Louisiana. (*See id.*, doc. 18 at 20-24.) He claimed that this testimony would have been favorable to the defense by portraying him as "inexperienced, naive, and not knowledgeable in the telemarketing industry," in contrast to his co-conspirators. (*Id.*, doc. 18 at 5.) The affidavits do not demonstrate that the affiants were available to testify at trial and would have done so, however. (*See id.*) He has failed to satisfy his burden under *Strickland* to establish ineffective assistance of counsel for failure to call the identified witnesses and affiants to present good character evidence. *See Day,* 566 F.3d at 538; *Alexander,* 775 F.2d at 602.

Movant also claims that counsel was ineffective for failing to present good character evidence through defense witness Daniel Shaw (Shaw) during his direct examination. (*See* No. 3:18-CV-2289-D-BH, doc. 10 at 21; doc. 18 at 5.) He offers only speculation and hearsay regarding the content of Shaw's proposed testimony on his good character, stating that he "is confident, as [Shaw] has represented to me before would testify to my good character reputation as an honest and law-abiding person." (*Id.*, doc. 18 at 6.) Movant's conclusory allegations do not satisfy his burden under *Strickland*. *See Day,* 566 F.3d at 538; *Alexander,* 775 F.2d at 602.

Because Movant has failed to demonstrate that his counsel was ineffective under *Strickland*, he is not entitled to § 2255 relief on this claim and it should be denied.

**B.**    **Failure to Challenge PSR Loss Calculations**

In his second ground, Movant argues that counsel was ineffective because he "failed to object to the [PSR's] loss calculation for sentencing guideline purposes and demand an evidentiary hearing because the Governments [sic] loss calculation evidence was inaccurate and lacked sufficient indicia of reliability to support its probable accuracy." (No. 3:18-CV-2289-D-BH, doc. 10 at 22-23.) He claims that the loss calculation: (1) "was grossly and inaccurately high"; (2) "included entities with which [Movant] had no involvement, and were legitimate"; (3) "failed to

adequately account for refunds, chargebacks, and reasonable costs of business such as rent, phone costs, security deposits, bond costs, etc." (*Id.*) He complains that the Government "simply provided probation and the Court with loss calculation conclusions only," failed to describe its methodology in reaching the loss amounts, and did not mention any reductions to the loss amount. (*Id.*, doc. 18 at 11.)

The PSR stated that "[t]o determine loss, agents analyzed the various bank accounts associated with each of the entities involved in this case and determined the total loss as a result of the entire conspiracy was $14,578,340.53." (doc 606-1 at ¶ 43.) From this, the PSR addendum summarized the losses that were reasonably foreseeable to Movant by entity, concluding that he was "accountable for reasonably foreseeable intended loss of $7,507,938.46."[5] (*Id.* at ¶¶ 43-44.) The information set forth in the PSR was obtained, supplemented, and corroborated through interviews with United States Postal Inspection Service (USPIS) agents, as well as a review of USPIS investigative materials and the indictment. (doc. 522-1 at ¶ 6.) The record is replete with evidence and testimony from a USPIS agent regarding the bank statements associated with the entities involved in Movant's offenses. (*See, e.g.*, docs. 1; doc. 683 at 46-140.) The same agent provided, supplemented, and corroborated information used by the USPO in preparing the PSR.[6]

---

[5] The sentencing guideline applicable to the loss amount provided for an 18-level increase to a defendant's base offense level if the greater of the actual loss or intended loss amount was more than $3,500,000, but less than $9,500,000. *See* U.S.S.G. § 2B1.1(b)(1)(J) (2015); § 2B1.1, cmt. n.3(A). Actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss is defined as "the pecuniary harm that the defendant purposely sought to inflict . . . and includes intended pecuniary harm that would have been impossible or unlikely to occur[.]" U.S.S.G. § 2B1.1, cmt. n.3(A)(i)-(ii).

[6] Movant alleges that the PSR loss amount attributed to him "included 2 entities concerning which there was no evidence submitted at trial linking said entities to indicted crimes, specifically Consumer Rights Advocates at $251,085.39 and Master Check International at $72,510.31." (No. 3:18-CV-2289-D-BH, doc. 10 at 23.) Both entities were identified in the indictment, and testimony and exhibits were introduced at trial relating to them, however. (*See, e.g.*, docs. 1 at 17-18; doc. 683 at 103-04; doc. 684 at 45-49; doc. 709 at 56, 59; docs. 743-7, 743-9, 746-15.) Movant also alleges that Vacation Realty International, for which the PSR held him accountable for $1,868,846.00, was unrelated to him. (*See* No. 3:18-CV-2289-D-BH, doc. 10 at 23.) He ignores that he was convicted of conspiracy, under which he "is responsible for offenses committed by other conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence

(*See* doc. 522-1 at 6.)  The loss amounts set out in the PSR have an adequate evidentiary basis supported by the record.  *See United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) ("the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence.") (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)).  Counsel objected to the loss amount attributed to Movant on the grounds that the Government had "double-counted and accounted for loss amounts that should not be attributed to [Movant]."  (doc. 582 at 1.)  He also stated that the loss amount was not below $3,500,000, and therefore, Movant's guideline range level would remain unchanged, however.  (*See id.*)

Movant has provided no evidence to demonstrate that the reasonably foreseeable intended loss amount attributed to him in the PSR "was inaccurate and lacked sufficient indicia of reliability to support its probable accuracy."  (*See* No. 3:18-CV-2289-D-BH, doc. 10 at 23); *see also United States v. Danhach*, 815 F.3d 228, 238 (5th Cir. 2016) (rejecting, in the context of a direct appeal, the defendant's arguments that the PSR's loss-amount calculation based on ledgers was "speculative and arbitrary," and improperly concluded that all business dealings involved stolen goods, where the defendant failed to provide any rebuttal evidence).  His conclusory and unsubstantiated statements of inaccuracy and error are insufficient to obtain relief.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative

---

of, the conspiracy." (doc. 708 at 97; *see also* docs. 487, 766.)  Movant's allegations are therefore without merit and do not warrant § 2255 relief.

evidentiary value."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'").  He therefore cannot show that counsel was deficient for failing to further challenge the PSR's loss calculation, and he is not entitled to relief under § 2255.

Even if counsel had been deficient for failing to further challenge the PSR's loss calculation, deficient performance alone is insufficient to establish relief under § 2255.  *Strickland* also requires a showing of prejudice.  To show prejudice in the sentencing context, a movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice.").  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Here, counsel objected to the loss calculation, and acknowledged that the proper loss calculation was not less than $3,500,000, the minimum amount subject to the 18-level increase under U.S.S.G. § 2B1.1(b)(1)(J) (2015).  (*See* doc. 582 at 1; doc. 606-1 at ¶ 52.)   In his reply, Movant claims that "the intended loss for which he is arguably responsible for [is] less than $2.5 million without chargeback and expenses reductions."  (No. 3:18-CV-2289-D-BH, doc. 18 at 14.) He does not provide any evidence beyond conjecture and bald assertions to support a $2.5 million intended loss amount, to demonstrate that he was entitled to credit for chargebacks, or to show that any business expenses incurred in connection with the convicted offenses were legitimate.[7]  His

---

[7] Movant appears to rely on U.S.S.G. § 2B1.1, cmt. n.3(E) as the basis for his claim that he is entitled to credit for chargebacks and legitimate business expenses.  (*See* No. 3:18-CV-2289-D-BH, doc. 18 at 12-13.)  Note 3(E) of § 2B1.1 provides that:

> Loss shall be reduced by the following: (i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected.  The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the

19

conclusory allegations, unsubstantiated by evidence in the record, fail to show that his sentence would have been lower absent counsel's deficiencies. *See, e.g.*, *Ross*, 694 F.2d at 1011; *Miller*, 200 F.3d at 282.

Accordingly, Movant has not shown that he is entitled to § 2255 relief under either *Strickland* prong for this claim, and it should be denied.

### C.    Failure to Challenge Court's Apportionment of Loss Amount and Non-Reduction for Legitimate Business Expenses

In his fifth ground, Movant argues that counsel was ineffective for failing "to object to the Court's failure to apportion loss between Movant and his co-conspirators and reduce the loss by legitimate business expenses." (No. 3:18-CV-2289-D-BH, doc. 10 at 24-25; *see also id.*, doc. 18 at 10.)

Aside from mentioning counsel's failure to object to the Court's failure to apportion loss between Movant and his co-conspirators, Movant does not develop this argument in his motion or reply. Because he has failed to allege any basis on which counsel should have objected to the apportionment of the loss amount, or how he was prejudiced by counsel's failure to object, he is not entitled to relief on this conclusory claim. *See Miller*, 200 F.3d at 282.

In support of his claim that counsel was ineffective for failing to object to the Court's failure to "reduce the loss by legitimate business expenses," Movant expressly "incorporates the

---

time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency. . . .

U.S.S.G. § 2B1.1, cmt. n.3(E). Trial testimony indicated that monies returned to the victim were not a refund from the entities involved in the conspiracy, but were the result of "a request by the individual claiming either they were not authorized to take the funds or claiming fraud, and the banks agree with their assertions and they return the money." (doc. 683 at 138.) Movant has provided no evidence that any of the chargebacks, i.e., "charges that the card holder's issuing bank declined to pay at the card holder's insistence," were returned by him, or others acting jointly with him, rather than by the issuing bank, before detection by the victim, bank, or credit company. *Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 735 (N.D. Tex. 2008) (describing chargebacks); *see also United States v. Masha*, 990 F.3d 436, 441 (5th Cir. 2021) (describing chargebacks as, "i.e., the paying bank requested a stop payment of the check."). Nor has he provided evidence of services rendered, and which provided value, to the victims.

supporting facts from ground two as if set forth herein verbatim," and provides no additional argument or evidence in support. (No. 3:18-CV-2289-D-BH, doc. 10 at 25.) As discussed above, Movant failed to satisfy both *Strickland* prongs to demonstrate that his counsel was ineffective for failing to challenge the loss amount on the basis that it failed to account for legitimate business expenses. He has provided only conclusory allegations and conjecture, unsubstantiated by the record, to support his claim. Because conclusory allegations are insufficient to merit § 2255 relief, his claim should be denied. *See Miller*, 200 F.3d at 282.

**D.**    **Failure to Challenge Testimony and Statements on the Jurors' Role in Determining Witness Credibility**

In his seventh ground, Movant argues that counsel was ineffective because he "failed to object, move to strike, and, request limiting instruction as to the Government's direct examination line and closing argument that the trial judge in addition to the jury would be deciding whether the Government cooperating witnesses were telling the truth[.]"  (No. 3:18-CV-2289-D-BH, doc. 10 at 25.)  He claims that the Government's direct examination of the co-conspirators and closing arguments "developed the improper proposition that the trial judge in addition to the Jury would be deciding whether the government witnesses were telling the truth."  (*Id.*, doc. 10 at 25.)

Movant challenges the following exchange during the direct testimony of co-conspirator Rani Khoury (Khoury):

> Q.    And I also advised you that when you were testifying that the jurors would be determining your credibility, as well as the judge?
>
> A.    That's correct.

(doc. 682 at 63.)  Movant claims that this testimony "reduced the jurie's [sic] perception of their exclusive role as the sole arbiters of the credibility of the government cooperators." (No. 3:18-CV-2289-D-BH, doc. 10 at 26.)  The testimony, however, clearly asks about a past representation

made by the Government to Khoury, and neither argues nor suggests a reduction of the jury's role

as the sole judge of witness credibility at trial.  (*See* doc. 682 at 63.)  Rather, when read in context

with the surrounding line of questioning, the challenged testimony clearly relates to whether the

Government would move for a lower sentence based on Khoury's substantial assistance and

whether the Court would decide to grant such a motion during sentencing.  (*See id.* at 61-63.)  This

testimony, relating to the Court's role in sentencing, did not state or imply that the Court had a role

in determining Khoury's credibility at Movant's trial, or that the jury's role in determining witness

credibility at the trial was reduced.  Movant has not demonstrated that counsel was ineffective for

failing to make a futile or meritless challenge, or that the Court would have sustained an objection,

granted a motion, or added a limiting instruction based on such a challenge.  *See United States v.*

*Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (holding that counsel is not deficient for failing to raise

a meritless argument).

Movant also claims that the Government's direct examination of "each cooperating

government witness" and its closing arguments "inform[ed] the jury that the Court is also an arbiter

of the credibility of the Government's cooperators and that the credibility of these witnesses would

be reviewed by the court at a later time, and therefore led the jury to belief that the responsibility

for determining the credibility of the Government's cooperator's [sic], upon which the entire

Government case depended, rested elsewhere." (No. 3:18-CV-2289-D-BH, doc. 10 at 25; doc. 18

at 6.)  Movant has not identified any other cooperating witness testimony or closing argument

statements that he claims should have been challenged.  His conclusory allegations are insufficient

to obtain relief under § 2255.  *See Miller*, 200 F.3d at 282.

Even if counsel's performance had been deficient, Movant has not shown prejudice.  To

show prejudice, a movant must demonstrate a reasonable probability that, but for counsel's alleged

deficient performance, the jury would have found him not guilty or he would have received a lower sentence.  *See Strickland*, 466 U.S. at 694.

Here, after the conclusion of closing arguments, the jurors were charged by the Court as "the sole judges of the credibility or believability of each witness and the weight to be given the witness' testimony."  (doc. 708 at 82.)  It further instructed the jurors that they "must not convict the defendant solely upon the unsupported testimony of an alleged accomplice or codefendant unless [they] believe that testimony beyond a reasonable doubt."  (*Id.* at 86.)  Courts will "presume that jurors understand and follow their instructions, abandoning that presumption only when there 'is an overwhelming probability that they jury will be unable to follow the instruction and there is a strong probability that the effect is devastating.'"  *United States v. Patino-Prado*, 533 F.3d 304, 313 (5th Cir. 2008) (quoting *United States v. Barksdale-Contreras*, 972 F.2d 111, 116 (5th Cir. 1992)).  Movant offers no facts or evidence to overcome this presumption and has failed to demonstrate a reasonable probability that he would have been acquitted or would have received a lower sentence but for the alleged deficiencies of counsel.

Movant is not entitled to § 2255 relief on this claim and it should be denied.

**E.**    **Failure to Object to Co-Conspirator and Bad Character Testimony**

In his eighth and ninth grounds, respectively, Movant argues that counsel was ineffective because he "failed to object and move to strike the Government witness [ ] Khoury's testimony," and because he "failed to move in limine, object at trial, and/or request limiting instructions as to evidence that the Movant was a bouncer at a gentlemen's club, because said evidence was evidence of bad character[.]"  (No. 3:18-CV-2289-D-BH, doc. 10 at 26-27.)

Khoury testified regarding a conversation between him and Movant:

Q.  Tell us about that conversation.

23

> A. He was wanting to take a look at it. He was interested in doing something with telemarketing 'cause he sees, I guess, people coming into Rachel's as patrons that are throwing money around, that are making money. So he wanted to also become something in the telemarketing industry.

(doc. 682 at 87.) According to Movant, counsel should have challenged this testimony on the grounds that it "was irrelevant, lacked any probative value, and was substantially prejudicial," and that it was inadmissible bad character evidence, which together with bad character evidence that he was employed as a bouncer at a gentlemen's club created "the propensity risk that the jury would convict [him] because he was a bad person[.]" (No. 3:18-CV-2289-D-BH, doc. 10 at 26-27.) He also argues that counsel's performance was deficient because he failed to challenge evidence that Movant was a bouncer at a gentleman's club, either through a motion in limine, objections at trial, or a request for limiting instructions. (*See id.*, doc. 10 at 27.) He contends that this failure also "created the propensity risk that the jury would consider him a bad person and therefore guilty." (*Id.*)

Assuming for purposes of this motion only that counsel's performance was deficient as alleged, Movant must also demonstrate a reasonable probability that, but for counsel's alleged deficient performance, the jury would have found him not guilty or he would have received a lower sentence. *See Strickland*, 466 U.S. at 694. He offers no facts or evidence beyond speculation and conclusory allegations to demonstrate a reasonable probability that he would have been found not guilty of any of the charged offenses, or that he would have received a lower sentence but for counsel's deficiencies. He is not entitled to relief under § 2255 on these claims, and they should be denied.

## V.    LOSS CALCULATIONS

In his third and sixth grounds, Movant argues that the Court erred in its loss calculation "for sentencing guideline purposes" because: (1) "the Governments [sic] methodology and proffer

at sentencing was inaccurate and lacked sufficient indicia of reliability to support its probable accuracy"; and (2) the Court did not "apportion[ ] loss . . . between Movant and his co-conspirators, and reduce the loss by legitimate business expenses." (No. 3:18-CV-2289-D-BH, doc. 10 at 24-25.) The Government argues that these grounds are procedurally barred from review and are not cognizable in this habeas proceeding. (*See id.*, doc. 11 at 24-25.)

As noted, a movant may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal. *Willis*, 273 F.3d at 595. To overcome the bar, they must show "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The only exception is when a movant can establish a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime convicted. *Id.* In the spaces provided to explain why he did not raise his third and sixth grounds on direct appeal, Movant stated only that "Appellate Counsel was Ineffective." He does not, however, assert any claim of ineffective assistance of counsel, or provide any facts or evidence in support of any such claim in his § 2255 filings. His conclusory statements are insufficient to establish cause or prejudice, and he has not established actual innocence of the crime convicted, as discussed above. His third and sixth grounds are therefore procedurally barred from consideration in this habeas case.

Even assuming for purposes of this motion only that his challenges to the loss calculation under the sentencing guidelines are not procedurally barred, it is well established that the technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. *See e.g.*, *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage

of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Williamson*, 183 F.3d at 432. Movant's claim regarding the alleged misapplication or miscalculation of the sentencing guidelines is not cognizable under § 2255 and entitles him to no relief. His claims should be denied.

## VI.    BURDEN SHIFTING AT SENTENCING

In his fourth ground, Movant argues that the Court "erred at sentencing by shifting the burden of proof from the Government onto the Movant to show basis for Court to question the sufficient indicia of reliablity [sic] of the Government's loss calculation for sentencing guideline purposes." (No. 3:18-CV-2289-D-BH, doc. 10 at 24.)

A PSR generally "bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (citation and internal quotation marks omitted). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Huerta*, 182 F.3d at 364 (quoting *Puig-Infante*, 19 F.3d at 943). Further, "[a] defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate, or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

As discussed, the loss calculation in the PSR was determined by "agents [who] analyzed the various bank accounts associated with each of the entities involved in this case." (doc 606-1 at ¶ 43.) The amount of reasonably foreseeable intended loss accountable to Movant was summarized by entity. (*Id.* at ¶¶ 43-44.) The information contained in the PSR was obtained,

26

supplemented, and corroborated through interviews with USPIS agents, as well as a review of USPIS investigative materials and the indictment. (*See* doc. 522-1 at ¶ 6.) The record contains evidence and testimony about the bank statements associated with the entities involved in Movant's offenses from an USPIS agent who was interviewed by the USPO during its preparation of the PSR. (*See, e.g.*, doc. 683 at 46-140.) Because the PSR's loss amounts have an adequate evidentiary basis supported by the record, the Court could adopt such amounts absent rebuttal evidence by the defendant. *See Huerta*, 182 F.3d at 364. Movant did not present rebuttal evidence, and he has failed to demonstrate that the challenged information in the PSR was "materially untrue, inaccurate, or unreliable." *Id.* (citation and internal quotation marks omitted). His claim that the burden was improperly shifted to him is therefore without merit. Further, to the extent his claim may be construed as challenging the Court's application and calculations under the sentencing guidelines, it is not cognizable in this § 2255 motion. *See Williamson*, 183 F.3d at 432.

Movant is therefore not entitled to § 2255 relief on this claim, and it should be denied.

### VII.    CUMULATIVE ERROR

In his reply, Movant claims that counsel's "deficient performance at trial and at sentencing, individually and cumulatively created a reasonable probability that the verdict and/or sentence would have been different." (No. 3:18-CV-2289-D-BH, doc. 18 at 15; *see also id.*, doc. 18 at 2, 16-17.)

The Fifth Circuit has recognized that "'[u]nder the cumulative error doctrine, relief may be obtained only when constitutional errors so fatally infect the trial that they violate the trial's fundamental fairness.'" *United States v. Fields*, 761 F.3d 443, 483 (5th Cir. 2014) (quoting *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009)). Because Movant failed to establish that his counsel was constitutionally ineffective under *Strickland* on any of his claims of ineffective

assistance of counsel, he has not demonstrated any constitutional errors that may be considered cumulatively. *See, e.g., Tovar v. United States*, No. 3:18-CV-528-B (BT), 2019 WL 7762200, at *7 (N.D. Tex. Dec. 26, 2019) (finding that the movant was not entitled to § 2255 relief on cumulative error claim where he failed to establish ineffective assistance of counsel under *Strickland*), *rec. adopted* 2020 WL 470270 (N.D. Tex. Jan. 29, 2020). Movant's claim of cumulative error entitles him to no relief under § 2255.

## VIII.    EVIDENTIARY HEARING

Movant requests an evidentiary hearing on each of his claims. (*See* No. 3:18-CV-2289-L-BH, doc. 18 at 1-4, 18.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2.

Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue. He also has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. He has therefore failed to demonstrate that he is entitled to an evidentiary hearing on any of his claims.

## IX.    RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Amended*, received on October 25, 2018 (doc. 10), should be **DENIED** with prejudice.

**SIGNED this 18th day of June, 2021.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE